Let's now turn to our next case on the calendar. Team Rubicon Global, Ltd. v. Team Rubicon, Inc. 20-1852. Let's just make sure we have both counsel at the ready. Mr. DeCock? Yes. Am I pronouncing that properly? Yes, you are, Your Honor. Great. And then Mr. Byrne? Yes. Great. Glad to have you both on the line. So, Mr. DeCock, you have 10 minutes, and I understand you would like to reserve three minutes for rebuttal. Is that right? Yes, please. Okay. So, Mr. DeCock, why don't you proceed? Sure. Good morning, Your Honors. May it please the Court, my name is Majid Daycak, and as the Court knows, I represent Team Rubicon Global, or we also call it TRG. My client, TRG, is a charitable institution that, before this preliminary injunction issued against it, was supporting a worldwide network of tens of thousands of volunteers doing work around the world, including work related to this current pandemic. This injunction issued, however, which caused all that work to fall apart. Tragically, the injunction was not even properly The first concern is the District Court's failure to balance the harms. The record is clear on this issue. The District Court failed to consider any balancing of the harms as to TRG as required. This is despite the fact that the District Court cited to the correct application law in citing to the U.S. Supreme Court case of Winter. And Winter is the decisive case on this issue. Quote, Winter says, in each case, courts must balance the competing claims of injury and must consider the effect on the party of granting or withholding the requested relief. But after correctly citing the law, the District Court failed to apply it as to TRG. There's not one single sentence contained in the ruling that discusses the harm to TRG if the injunction is granted against it. The language for Winter is clear. It's required in every case. The defendant's argument as to this first issue on appeal is that in certain cases, and it's not clear what cases those are, but in certain cases, there's a new test. And that new test does not require a balancing of the harm. But that's not correct. We know from this circuit's Salinger, which discusses Winter in detail, that you must balance in each case. And this court, as recently as August of 2020, actually addressed a similar suggestion made by a party. In New York v. U.S. Department of Homeland Security, and I believe Judge Lynch presided over that case, the court stated in footnote 38 that one of the parties had a suggestion that you don't need to do the balancing of the harms. And I'm quoting the footnote here, notwithstanding that possibility, we consider the balancing of the equity as discussed in Winter. So Winter is clear on this issue, and the District Court failed on this issue. So, counsel, let me hit the pause button for you there. And let me ask whether Judge Kearse, to begin, has any questions? Not at the moment. Okay. Judge Lynch? Not for now, thank you. Then I have one question for you. Let's assume that we do need to balance the hardships, as you suggest. If we were to agree with the District Court that your opponent has demonstrated a likelihood of success in the merits, meaning you're infringing their trademark, would it be appropriate to consider the hardships to your client, which would, of necessity, flow from, effectively, their claimed right to infringe a trademark? I mean, doesn't that become a factor that effectively loses all weight? Again, take my hypothetical. I understand. The hypothetical is assuming that the court still finds the likelihood of success in the merits. Do you still need a balance on the harms? And the answer is yes. I mean, the Supreme Court is clear on this issue. There's no court that says otherwise. None of the courts that discuss Winter in the Second Circuit say, well, in certain cases, you don't need to balance it. No, no. I'm sorry. I'm probably not being clear. I'm sorry. I'm suggesting, assume two things. Assume, number one, that the court has correctly found that your opponent has shown a likelihood of success in the merit on the infringement. Also assume that we agree with you that one ought to balance the hardships. I guess what I'm asking is, based on those two assumptions, what legally cognizable hardship do you have? In other words, what hardship would you be arguing that is not premised upon a right to continue infringing a trademark? Well, that's, it's a good question. So, and all the hardships that we put forth in the district court do arise out of our use of the mark. That was what was, that's what the injunction was directed toward. And so, it's, by not being able to use that, we listed a whole bunch and I can give you the evidence, but I think you have it in front of you. Oh, I understand that evidence. Yeah. I guess what I'm trying to figure is how linked are the findings on likelihood of success in the merits and balance of hardships with respect to your client effectively bound to one another and sort of rise and fall together? And I understand you don't think that they've shown a likelihood of success in the merits, and I'm certainly not trying to concede that point. I'm just trying to identify what I think might be linkage between the two issues. One minute. Certainly, there's some linkage. The only kind of big distinction I would make is the factors are different because the balancing of the harms, this is, you know, this is pre-merits before, you know, no one's really tested whether you're going to succeed at trial or not. The judge is making its best effort to try and make that determination. And so, before you're going to go forward with this extraordinary remedy, you've got to do the other parts of the test. So, although you may find some likelihood of success, you need to really establish that if you look as a whole on the balancing of the harm, yes, I agree with you, they are related, but the test is distinct on that issue because before you grant that injunction, which is about to, in our case, cripple the company going forward, you've got to be sure that the harm here is not skewed one way that it would not be proper ultimately issuing the injunction. And that's what happened here. Does that answer your question, Your Honor? Yeah, no, that's very helpful. And I've lost track. Actually, I'm going to ask Mr. White, where are we on the count? We just finished that one minute. So, we just expired Mattel's time. Okay. So, I'll tell you what, Mr. Daycock, do you want to just hold on to your three minutes for rebuttal, or do you want to use any of that right now, or shall we turn to your adversary? Let me just use one more minute. That way I can get just to some other high point issues Sure. Sure. The second issue on appeal is the court failed to properly assess irreparable harm. As this court knows, this is the single most important prerequisite for issuing a preliminary injunction. eBay and Salinger, eBay, the U.S. Supreme Court in 2006 and Salinger are clear on this issue. You cannot have categorical general rules in order of making the finding of irreparable harm. But that's what the court did precisely here. First, it cites to some older case law, Church of Scientology from 1986, the Second Circuit case, which basically she quotes and saying, if you show a likelihood of confusion, you establish irreparable harm. And the court also cites the Heisman Trophy District Court case from Southern District of New York that deals with a contract that says you can have irreparable harm on a permanent injunction. But we know from eBay and Salinger that's not permissible. You can't have categorical harm. And then even the evidence that she uses in finding allegedly this irreparable harm is on the slightest of evidence and on the most important factor. The first is the agreement in the language from the MTLA or the Master License Agreement, which we know from eBay and Salinger is not permissible to show actual imminent irreparable harm. The second one is the one instance of alleged confusion on a Facebook post where that post was that they actually, the defendant here redacts the name of the user. First of all, it's not clear what's going on from that post. The declaration on it lacks foundation. They don't speak to the poster. But on top of that, all the post seems to suggest is there's some links going to TRI or the defendant here, and there's a link to donate money to TRI. So I can't imagine how there's any harm asked to TRI if the money is going to TRI. So let me just say, I think you've used about two more minutes. You want to hold on to one minute for rebuttal? Sure. I'll hold on. Thank you. Okay. Very good. So Mr. Byrne, you have, or actually first, let me just ask my fellow panelists if they had any further questions for Mr. Daycock right now. None here. None here. Okay. Let me turn to Mr. Byrne. You have 10 minutes. Thank you, Your Honor, and may it please the court. Michael Byrne from Latham & Watkins for Team Rubicon, Inc. And I'll try and address the two arguments that have been raised thus far this morning. And I'd like to begin first by addressing the balance of hardships point. I think, to be the district court recognized that in evaluating a preliminary injunction, it is appropriate for courts to be attentive to balancing the competing claims of injury in a case absent or that followed from an injunction. And in this case, the district court found in detail why we were likely to experience irreparable harm absent an injunction. What TRG largely complains about is that the court did not go on to use the magic words of balancing the hardships and addressing the comparison between that harm and the lack of harm that TRG would experience. But I think that to the extent that there is any uncertainty around whether the district court evaluated the harms, that was addressed by the district court's subsequent stay order in which the district court clarified that the only harms that TRG was articulating, as was confirmed this morning at argument, were harms that followed from their desire to continue an infringing use of our mark. And as this court made clear in the WPIX case, that harm is not legally cognizable. And the district court made that clear. So there's no question where the district court came out with respect to what it to be or the balance of the harms to be in this case. And to the extent that the ultimate complaint from the other side is that the district court didn't use the right magic words in its initial decision, we think it would be entirely futile to remand the case to have the district court enter what it already said in its stay order. And that's particularly the case also, we would point to the fact that this court has noted in Freedom Holdings versus Spitzer case, that's 408 F3rd 112, that it's appropriate for this court to affirm that in reviewing the district court's decision on a preliminary injunction for abusive discretion, it's appropriate to affirm the preliminary injunction on any ground supported by the record. So here, particularly where we have strong findings by the district court that we have a clear likelihood of success and are likely to experience reputable harm after an injunction, and the district court went on to balance the harms explicitly in the stay order and clarify that ultimately it found no legally cognizable harm that the other side would experience. We think that there's more than enough in the record to affirm the preliminary injunction. Mr. Byrne, I think this would be a moment for me to inquire of the other judges whether they have questions. So let me start, Judge Kearse. No questions. Judge Lynch. Yes, Mr. Byrne, you've argued that none of the harms on their side of the ledger would be legally cognizable. I thought, and please correct me if I have this wrong, I thought the whole idea of the balance of hardships was for the court to ask itself, if I'm wrong here, if I enter the injunction incorrectly versus if I deny the injunction incorrectly, who's worse off? You know, where the risks lie here? And I wonder if looking at it that lens, why would you say that something is, of course it's not legally cognizable, to say I'm harmed because I'm not allowed to violate the trademark anymore. But I thought the whole idea was this is a preliminary stage, and we're saying what's likely to be the outcome, but we don't know for sure, and we therefore have to consider what if I'm wrong? Who's worse off? Who bears a greater risk from a mistake? Sure. So I think in evaluating the propriety of a preliminary injunction and thinking about the balance of harms, courts don't have to blind themselves to the likelihood of success in the case. And I think that's shown by the fact that this court's standard for considering whether a preliminary injunction should issue, when there is a greater likelihood of success, the showing that's required with respect to the balance of hardships is less than what would be required where there is a more modest showing of the probability of success. And that's appropriate because in comparing the harms that are appointed to by both parties, it's right for this court to consider what is the likelihood of success ultimately in the case. And I think the trademark infringement context is a particularly apt place to be attentive to that. In a case like this, both sides are going to point to essentially mirror images to a certain extent in terms of the harm. We're going to say that the party that's claiming trademark infringement is going to argue that the infringement is putting at risk our brand, our reputation, our goodwill. The other side is going to say that absent their continued ability to use the trademark, that they're going to experience some harm to their business operation. And it can't be that that just ends up in a wash. And I think that courts, including this court, have validly considered the likelihood of success in thinking about how that balance of harm shapes up. And that's appropriate because, again, if there's a strong likelihood of success, then it is appropriate, we think, to consider the much greater likelihood that we will in practice be harmed. And I'll also point out that in this case, the harm that would be experienced by TRG is substantially more modest than the harm that we would experience. There's nothing that prevents TRG from continuing to facilitate to the extent it wants to do so efforts by non-profit disaster relief organizations around the world. Some of the TR country organizations that are figures in this case, such as TRUK, for instance, have now subsequently rebranded themselves as other organizations. Nothing would prevent TRG from continuing to work with those organizations. But by contrast, to the extent that we can't our reputation, our goodwill, the integrity of our brand is at stake. And that's critical not only for our ability to bring in donors, to develop partnerships, but it's also critical to the communities that we want to serve. Our mission is a really important one, which is to help communities that are experiencing disasters. And when we're dealing with people in their most desperate situation, those communities only want to bring in organizations whose integrity, whose brand name, whose reputation is unquestioned. And so here, the reputable harm that we're experiencing is substantially more than any harm that TRG has articulated in this case. I'd like to point to... Those are all questions I have, sir. Okay. Thanks. And I don't have any questions right now. This is Judge Nardini. So you can please go ahead and continue wherever you were before we interrupted you. Sure. Not a problem. Let me just say two things quickly. I want to address my opponent's argument that the district court erred in finding that we were likely to experience reputable harm. There was no error in Judge Swain's opinion, and certainly she didn't abuse her discretion in finding that. TRG does not appeal the district court's finding on page 13 of its order that we had demonstrated a likelihood of confusion from TRG's ongoing use of the Team Rubicon mark. And that followed from the district court's factual findings. Again, this is not a presumption, but factual findings that TRI's marks are distinct and recognizable, and that TRG has an almost identical name, operates in an identical space, and markets to the same donors and partners. So it's fairly common sense and self-evident that there is a likelihood of confusion here, and this court has recognized that that likelihood of confusion is especially strong in this context where we're dealing with a licensor and a former licensee. One minute. And although counsel points to the eBay case, what that case was really about was the Supreme Court suggesting that where you have a showing of a likelihood of success, you can't simply use that likelihood of success and view that as categorically establishing a reputable harm. It wasn't saying that where you have demonstrated a likelihood of confusion, a likelihood of risk to your goodwill, reputation, and brand, that that can't qualify as a showing of a reputable harm. And here, as this court has said in a number of cases, including cases post-dating eBay, a party whose trademark is being infringed has lost control over its goodwill, its reputation, and brand. Those are categorical examples of a reputable harm. And we think, therefore, that the district court didn't come close to abusing its discretion. I think if there are no further questions from this panel, the last thing I would just say is that the other side raises questions about the credibility of the court's likelihood of success finding. But this is a case where we conducted an investigation into allegations of sexual harassment that were made against the CEOs of Team Rubicon UK and Australia. Those allegations were corroborated by nearly two dozen eyewitnesses, including TRG's own chief information officer. We'd encourage the panel, if it has any questions about that, to look at those reports, starting at page 483 of the record. And as TRG itself conceded at page 631 of the record, that conduct threatened to damage the value and goodwill associated with TRI's brand and amounted to a violation of TRG's own sub-license agreements with Team Rubicon UK and Australia. We asked them to take actions to protect the value of our brand and remedy those violations, and it proved itself unwilling or unable. And despite being warned in writing that that failure amounted to a material breach of its responsibilities, it failed to take any action to respond to us during the 60 days that it had to cure that breach, either to take the position that it had not engaged in misconduct or to say that it was taking actions to resolve what it itself admitted to be breaches of the sub-license. So again, we think the trial court didn't come close to abusing its discretion, concluding that we had a clear likelihood of success. And if there are no further questions from the panel, I'll relinquish the remainder of my time. Thank you. And I'll just check with my panelists because I can't look at them to see whether they have any extra questions. No, no, no questions. Okay, Mr. Dacak, I think by my measure, you have about a minute left in your rebuttal. So why don't you go ahead and actually can I ask you a small question to clarify just something that's in the record? Of course. One of the fights is over confusion. And there's this Facebook post on page 164 that the parties dispute. So can I just direct your attention? Do you know what I'm talking about? I do, Your Honor. Yes. And each party, I'm a little confused. It seems like a very basic fact. But there seems to be a factual dispute over it. Your adversaries say it's directing people to donate to Team Rubicon Global. And your brief says, no, the link is in fact to Team Rubicon Inc. I'm looking at it. And I guess the top half of it appears to be a link. It says classy.org, donate to Team Rubicon Global. Is that not something that's directing the parties to a link to Team Rubicon Global? Or are you referring when you say a link to Team Rubicon USA? Are you referring to the link at the bottom of the page? Oh, I'm actually referring to the declaration that describes that post. So I'm looking at the post itself, though, which is in the record, right? It's appended to the record. It's attached to a declaration that describes the post. So just look at the post on page 164 for me. Okay. Is your argument that the link at the top, again, you see where I'm saying classy.org, donate to Team Rubicon Global? I do. You see that? Your Honor. Yeah. Is your argument that that is in fact a link to Team Rubicon Inc. or Team Rubicon USA? I don't know. I mean, excuse me. So I guess I wasn't sure. I wasn't sure then how you can argue that the district court was erroneous in looking at this that was in the record and saying that shows a Facebook post that at the bottom is linking to Team Rubicon Inc. while at the top is soliciting a donation to your client. What am I missing about that? No, you're reading it absolutely correct. The only difference is when we analyzed that post, we read it in the context of the declaration. The declaration does not state if you click on that link, it will go to that website, this classy.com, where it goes. I don't know. I've never clicked on that link personally. Okay. All right. And that's the only distinction. Okay. That's helpful. And I appreciate that clarification. I kind of grabbed your time, but if you want to take a minute of that one minute of rebuttal that remains to you to talk about whatever it is that you were hoping to talk about, please go ahead and do so. Sure, Your Honor. The main point I'll rebut on is opposing counsel suggests that the court didn't use certain magic language, but the district court needs to balance the harm to TRG if her initial determination on the merits turns out to be wrong. And of course, if it turns out to be wrong, she needs to assess, well, how badly am I going to hurt TRG in this situation? And we heard a lot of argument by opposing counsel about balancing the harm, which is something the district court failed to do. The other suggestion he made is, well, she balanced the harm on the stay motion. One, I'll argue that she did not. Two, we know from all the teachings of Winter and Salinger, before you issue an injunction, you need to injunction proceeding, not during a subsequent month and a half later stay proceeding. And the stay elements do not require balancing the harm. So again, we don't think that she balanced the harm. As to this idea that the sexual harassment in that investigation is determinative on the points that opposing counsel was making, that the allegations were found to be credible. Actually, that's a different issue on appeal, a separate issue where the court abuses discretion in looking at the facts. We put a declaration from the person that made the acquisitions, the volunteer in Canada, where she was told by a TRI declarant in this briefing in the underlying court that her acquisitions were found to be not credible. So you have TRUSA's declaration, one by the CEO, Jake Woods, saying allegations are credible. The person that was harassing, she was told that it was not credible. Those two are not agreeable material facts. And the court then went on to try to then ignore the accuser's declaration, frankly, and they went on basically merits assessment without a required evidentiary hearing, which is, again, another subject of abuse discretion here. Very good. So thank you. I think we understand your argument. And let me just ask again, Judges Kearse and Lynch, whether they had any final questions for you. No final questions here. No further questions here. Thank you. Okay. Let me thank both counsel then for very helpful arguments. We appreciate it. We will take the case under advisement and reserve decision.